[655 NYS2d 648]

In the Matter of ROBERT PLAN CORPORATION, Appellant, v
GREINER-MALTZ COMPANY, INC., Respondent.

Second Department, March 31, 1997

APPEARANCES OF COUNSEL

*Murray & Hollander,* New York City *(Donald Davis* of counsel), for appellant.

*Thomas L. Costa, L. L. P.,* Melville, for respondent.

**OPINION OF THE COURT**

ALTMAN, J.

At issue on this appeal is the interpretation of a 1982 amendment to Lien Law § 2 (4) which expanded the definition of "improvement" to include the performance of certain specified real estate brokerage services, thereby enabling real estate brokers to file mechanic's liens.

In October 1992, the petitioner Robert Plan Corporation (hereinafter Robert Plan) entered into a written real estate brokerage agreement which granted the respondent Greiner-Maltz Company, Inc. (hereinafter Greiner-Maltz) the exclusive right to locate property for purchase or lease for its operations in the New York metropolitan area. The agreement provided that Robert Plan would pay Greiner-Maltz a percentage of the gross aggregate rentals as a brokerage fee.

Some time in 1994, Robert Plan entered into a commercial lease with Grumman Aerospace Corporation (hereinafter Grumman) for a term in excess of three years. A dispute subsequently arose between Robert Plan and Greiner-Maltz regarding payment of a brokerage fee and Greiner-Maltz filed a notice of mechanic's lien against Grumman's property.

Robert Plan then commenced this proceeding to summarily discharge the lien pursuant to Lien Law § 19 (6), contending that the lien was facially invalid because the services allegedly performed by Greiner-Maltz were not "for the improvement of real property" as defined by Lien Law § 2 (4) and § 3. The Supreme Court denied the application and dismissed the proceeding.

Lien Law § 3 provides, in relevant part: "A contractor * * * who performs labor * * * for the improvement of real property with the consent or at the request of the owner thereof * * * shall have a lien for the principal and interest, of the value, or

the agreed price, of such labor * * * from the time of filing a notice of such lien as prescribed in this chapter".

Lien Law § 2 (4) defines "improvement" as, *inter alia:* "the performance of real estate brokerage services in obtaining a lessee for a term of more than three years of all or any part of real property to be used for other than residential purposes pursuant to a written contract of brokerage employment or compensation".

Robert Plan contends, as it did in the Supreme Court, that any services allegedly performed by Greiner-Maltz pursuant to the brokerage agreement were for the purpose of obtaining a lessor for Robert Plan, not a lessee. Consequently, the services are not encompassed by the Lien Law's definition of "improvement". In rejecting that claim, the Supreme Court concluded that the identity of the party for whom the services were performed was not dispositive. Rather, the determinative factor was whether the lease met the criteria set forth in Lien Law § 2 (4).

We disagree with the Supreme Court's interpretation of the statute. Section 2 (4) was amended in 1982 to expand the definition of "improvement" to include the provision regarding real estate brokerage services (L 1982, ch 925, § 1). While the statute does not explicitly state that the contract must be with the owner, the Legislature's use of the word "lessee" reflects its intention to restrict application of the provision to brokerage contracts between a property owner/lessor and a broker. "[W]here a law expressly describes a particular act, thing or person to which it shall apply, an irrefutable inference must be drawn that what is omitted or not included was intended to be omitted and excluded" (McKinney's Cons Laws of NY, Book 1, Statutes § 240, at 411-412).

To constitute an "improvement", the services provided must be the procuring of a lessee pursuant to a written agreement. The parties to such an agreement could only be the owner or its agent and a broker. Had the Legislature intended the term "improvement" to include services provided to a lessee in acquiring a lease as well as those provided to an owner/lessor, it would have used the word "lease" rather than "lessee".

This construction of Lien Law § 2 (4) is in accord with the legislative history of the amendment which reveals that the problem sought to be addressed was the nonpayment of commissions by nonresident property owners or owners who sell property after acquiring a tenant and leave the State *(see, e.g.,* Mem and July 12, 1982 letter in Support of Assemblyman

Robach, Bill Jacket, L 1982, ch 925). Numerous letters in support of the legislation reflect the real estate industry's understanding that the amendment would apply only to transactions involving a written agreement between a property owner and a broker *(see, e.g.,* July 8, 1982 letter from New York State Association of Realtors, Inc.; Dec. 1, 1982 letter from Sinclair Goldsmith Price Inc.; Dec. 2, 1982 letter from Edward S. Gordon Company Inc. [Bill Jacket, L 1982, ch 925]). The distinction drawn by the Legislature between services performed for owners, which can form the basis of a lien, and those provided to lessees, which cannot, is therefore a logical one.

Accordingly, the definition of "improvement" under Lien Law § 2 (4) does not encompass the services allegedly performed by Greiner-Maltz in locating property for Robert Plan to lease. Since the services were not "for the improvement of real property", Greiner-Maltz does not have a valid lien, irrespective of whether Grumman consented to the performance of the services (Lien Law § 3). Consequently, Robert Plan is entitled to an order summarily discharging the lien *(see,* Lien Law § 19 [6]).

BRACKEN, J. P., MILLER and COPERTINO, JJ., concur.

Ordered that the order is reversed, on the law, with costs, the application is granted, and the lien is discharged.